IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PAUL R. GOLDSTEIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 19-2188-CFC-SRF |
| | ) | |
| AETNA LIFE INSURANCE CO. and | ) | |
| SANOFI-AVENTIS U.S. LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

**I.   INTRODUCTION**

On November 25, 2019, Paul R. Goldstein ("Plaintiff" or "Mr. Goldstein"), filed this action against Aetna Life Insurance Company ("Aetna") and Sanofi-Aventis U.S. LLC ("Sanofi," together with Aetna, "Defendants") pursuant to the Employment Retirement Income Security Act of 1974 ("ERISA") 29 U.S.C. § 1001 *et seq.* (D.I. 1)  Mr. Goldstein was previously employed by Sanofi. (D.I. 18 at 2)  Mr. Goldstein is a member of the "Sterling Medicare Prime Salaried & Hourly Non-Union Retiree $250,000 – Traditional Medical Plan" ("the Plan"). (D.I. 19 at 1)  Sanofi is the administrator of the Plan, which is self-funded by a Sanofi employer fund. (*Id.* at 3, 82, 88)  Aetna provides third party administrative services under the Plan. (*Id.* at 2–3)  Mr. Goldstein asserts that Aetna abused its discretion by insufficiently paying his claims for reimbursement of a portion of the out-of-pocket costs he paid for home health care services for himself and his wife, Marsha Goldstein. (D.I. 1)  Currently before the court is Mr. Goldstein's "Opening Brief," which the court construes as a motion for summary judgment.[1] (D.I. 7)

---

[1] Motions for summary judgment and any opening briefs and affidavits in support thereof were due to be served and filed on or before June 11, 2020. (D.I. 6 at ¶ 3)  Plaintiff's opening brief was timely filed on June 10, 2020. (D.I. 7)  The court construes his opening brief as a motion for

1

The court has jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e). For the reasons set forth below, I recommend that the court DENY Mr. Goldstein's motion for summary judgment and enter judgment in favor of Defendants.[2]

## II. BACKGROUND

### A. Plan Details

The Plan offers coverage to members for services "provided by a home health care agency in the home." (D.I. 19 at 19–20) The Plan defines home health care agency as "[a]n agency licensed, certified or otherwise authorized by applicable state and federal laws to provide home health care services, such as skilled nursing and other therapeutic services." (*Id.* at 72)

The Plan includes a payment schedule. (*Id.* at 89–108) Plan members are responsible for paying deductibles and all amounts exceeding eligible coverage under the terms of the Plan. (*Id.* at 43, 76) The Plan covers "80% (of the **recognized charge**) per visit" for home health services up to a total of 120 maximum visits per calendar year. (*Id.* at 96) (emphasis in original) "Recognized Charge"[3] is a defined term under the Plan. (*Id.* at 76–77, 115–17) Effective January 1, 2019, the definition of Recognized Charge was amended under the Plan. (D.I. 19 at

---

summary judgment. *See, e.g.*, *Brewer ex rel. Z.C. v. Berryhill*, C.A. No. 17-694-LPS, 2018 WL 4554505, at *1 n.2 (D. Del. Sept. 21, 2018) (construing a *pro se* plaintiff's opening brief as a motion for summary judgment in a social security administrative appeal).
[2] On June 27, 2020, the parties filed a joint case management report (the "joint report") pursuant to Fed. R. Civ. P. 26(f). (D.I. 11) In the joint report, the parties agreed to resolve this matter through cross-briefing based on the administrative record. (*Id.* at 3) Mr. Goldstein argues that he was never provided with a copy of the joint report. (D.I. 15 at 3–4) Despite Mr. Goldstein's contention that he did not stipulate to the joint report, he has not argued any prejudice, nor has he proffered an alternative case management proposal. (*See* D.I. 15; D.I. 21) Regardless, the court has considered all of Mr. Goldstein's filings on the docket in addressing his motion for summary judgment. The briefing for the pending motion is as follows: Mr. Goldstein's opening brief (D.I. 7), Mr. Goldstein's reply briefs (D.I. 13; D.I. 21), Mr. Goldstein's answering brief (D.I. 14), Mr. Goldstein's status report (D.I. 15), and Defendants' answering brief (D.I. 18).
[3] The court refers to the term "Recognized Charge" throughout this Report and Recommendation as it is defined in the Plan.

2

115–17)  Before the amendment became effective, the Plan defined Recognized Charge as "[t]he reasonable amount rate." (*Id.* at 76)  For home health care services in particular, the Plan set the reasonable amount rate according to rates for such services in a geographic area as reported by FAIR Health,[4] a non-profit company that maintained a database on health care costs. (*Id.* at 76–77)  As of January 1, 2019, however, the Plan defined Recognized Charge as "[a]n amount determined by Aetna, or its third-party vendors, based on data resources selected by Aetna, reflecting typical competitive charges and/or payments for a service, adjusted for the geographic area in which the service was provided." (*Id.* at 115)

At all relevant times, under the Plan's terms, Aetna has discretion to pay all, some, or none of the Recognized Charge of a member's claim for coverage. (*Id.* at 47)  Aetna also has discretionary authority to review and decide a member's appeal of an "adverse benefit determination." (*Id.* at 47–50)  An "adverse benefit determination" occurs "[a]ny time [Aetna] den[ies] even part of the claim." (*Id.* at 47)  The Plan provides a process for members to appeal any adverse benefit determination. (*Id.* at 47–50)  In most situations, members must undertake two levels of internal appeals before commencing suit to recover benefits. (*Id.* at 49)

---

[4] In an attachment to their answering brief, Defendants request that the court take judicial notice of FAIR Health's website, a screenshot of which is included within the body of their answering brief and is labeled "Exhibit 1." (*See* D.I. 18-2; D.I. 18, Ex. 1)  Mr. Goldstein argues that Defendants did not provide the court with any "background material" or "information" regarding FAIR Health's role in resolving the disputes before court. (D.I. 21 at 1–2)  The court declines to take judicial notice of what Defendants purport is FAIR Health's website because, as Mr. Goldstein argues, it has no bearing on the court's analysis of whether Aetna abused its discretion in handling his claims as of January 1, 2019.

### B. Factual and Procedural Background

#### 1. Mr. Goldstein's 2019 Claims

In 2019, Mr. and Mrs. Goldstein received home health care services from RRW Inc. d/b/a Home Instead Senior Care ("Home Instead"). (*See, e.g.*, D.I. 16 at 289, 418–19, 473) Home Instead charged Mr. Goldstein $23 per hour, amounting to $92 for every four-hour session. (*Id.*) Mr. Goldstein paid Home Instead out-of-pocket in full and then filed claims for reimbursement with Aetna. (D.I. 7 at 4–5; D.I. 18 at 4) Aetna reimbursed Mr. Goldstein's 2019 claims at a rate of 80% of the Recognized Charge for every four-hour session of home health care by Home Instead. (D.I. 16 at 312, 430, 440, 498) After he was allegedly underpaid on the covered reimbursement amounts, Mr. Goldstein filed multiple first level appeals with Aetna, arguing that the payments were insufficient according to the terms of the Plan. (*Id.* at 419, 493, 528) Aetna timely responded to Mr. Goldstein's first level appeals and upheld its decisions to reimburse Mr. Goldstein at a rate of 80% of $65, the Recognized Charge for home health care services. (*Id.* at 429–31, 456–61, 497–503) Next, pursuant to Plan procedures, Mr. Goldstein filed multiple second level appeals with Aetna. (D.I. 19 at 48; D.I. 16 at 283–84, 294, 303, 470) In addition to disputing the reimbursement payment amounts, Mr. Goldstein requested clarification from Aetna about how it would handle his future claims for reimbursement for home health care services. (D.I. 19 at 303, 470) Aetna again upheld its initial reimbursement decisions and noted that its second level appeal decisions were final. (*Id.* at 311–13, 486–88, 521–23)

### 2. Mr. Goldstein's 2020 Claims[5]

From at least January 2020 through April 2020, Mr. Goldstein paid for and received home health care services from Senior Helpers, Inc. ("Senior Helpers"). (D.I. 7 at 4; D.I. 18 at 5–6; D.I. 16 at 620–31, 635–37) He argues that Aetna improperly denied his claim for reimbursement of his costs for services provided by Senior Helpers. (D.I. 7 at 4–6) Mr. Goldstein asserts that Senior Helpers is a "qualified" home health company that provides the "same, exact" services as Home Instead. (*Id.* at 4, 8) After considering applicable deductibles, Mr. Goldstein seeks reimbursement for 80% of the "actual rates" that he paid for home health care services from January 1, 2019, and continuing indefinitely into the future. (*Id.* at 8–11) In response, Aetna argues that Mr. Goldstein has not gone through the proper internal appeals process for any of his claims for reimbursement related to services provided in 2020, therefore, they should not be considered by the court.[6] (D.I. 18 at 5–6) In addition, Aetna argues that, regardless of any procedural deficiencies, Senior Helpers is not a properly licensed home health

---

[5] Mr. Goldstein filed a complaint in this case on November 25, 2019. (D.I. 1) The complaint could not have included a demand for payment for any services that Mr. Goldstein had not yet received and submitted to Aetna, even if he expected such home health care services to continue. (*Id.*) Consequently, no administrative record exists for claims that did not exist at the time the complaint was filed. (D.I. 16; D.I. 19) ERISA suits for benefit denials are limited to the closed administrative record. *See Felker v. USW Local 10-901*, 697 F. App'x 746, 751 (3d Cir. 2017); *Mitchell v. Eastman Kodak Co.*, 113 F.3d 433, 440 (3d Cir. 1997); *see also Malin v. Metro. Life Ins. Co.*, 845 F. Supp. 2d 606, 612 (D. Del. 2012). However, in his briefing, Mr. Goldstein demands relief for insufficient reimbursements he received for services provided in 2020. (D.I. 7 at 9) Mr. Goldstein seeks $5,232 from Aetna related to his 2019 claims and $8,220 related to his 2020 claims, for a total demand of $13,542. (*Id.* at 10–11)

[6] According to Aetna, Mr. Goldstein did not file any first level appeals related to services provided by Home Instead in 2020. (D.I. 18 at 5, 11) Aetna acknowledges that Mr. Goldstein filed a "single level appeal" in response to Aetna's denial of coverage for Mr. Goldstein's costs associated with Senior Helpers. (*Id.* at 10) However, Aetna asserts that Mr. Goldstein has not filed a proper second level appeal related to Senior Helpers. (*Id.* at 11–12)

care services provider as defined in the Plan, and, therefore, no portion of its services are covered by the Plan. (*Id.*)

### III.   STANDARD OF REVIEW

"To prevail on summary judgment, the moving party must show that there is no genuine dispute of material fact, with all facts 'viewed in the light most favorable to the non-moving party' and "all reasonable inferences drawn in that party's favor.'" *Addington v. Senior Vice President Human Res. Consol Energy, Inc.*, 2020 WL 7774952, at *3 (3d Cir. Dec. 30, 2020) (quoting *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 288 (3d Cir. 2018)). ERISA allows a beneficiary to bring a civil action in federal court against an administrator or fiduciary to recover benefits due under the terms of a benefit plan. *See* 29 U.S.C. § 1132(a)(1)(B).[7] Courts review a denial of insurance benefits "under a *de novo* standard," unless the benefit plan at issue grants discretionary authority to the administrator or fiduciary to determine eligibility for benefits or interpret the plan's terms. *Metropolitan Life Ins. Co. v. Glenn,* 554 U.S. 105, 111 (2008) (quoting *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1989)). If a plan grants discretionary authority to an administrator or fiduciary, a court must apply the arbitrary and capricious standard when reviewing administrative decisions. *See id.* Although the applicable standard of review is sometimes described as "abuse of discretion," in the ERISA context, "the arbitrary and capricious and abuse of discretion standards of review are essentially identical." *Duda v. Standard Ins. Co.*, 649 F. App'x 230, 234 n.6 (3d Cir. 2016) (quoting *Miller v. Am. Airlines, Inc.*, 632 F.3d 837, 845 n.2 (3d Cir. 2011)). Under this standard, "a reviewing court

---

[7] The statute states: "A civil action may be brought—(1) by a participant or beneficiary—... (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

may overturn a decision of the Plan administrator only if it is without reason, unsupported by substantial evidence or erroneous as a matter of law." *Id.* at 234 (internal quotations and citations omitted). Thus, the court's task is to "determine whether there was a reasonable basis for the administrator's decision, based on the facts known at the time the decision was made."[8] *Id.* at 234–35 (citing *Smathers v. Multi–Tool, Inc.*, 298 F.3d 191, 199–200 (3d Cir. 2002)).

## IV. DISCUSSION

### A. Mr. Goldstein's 2019 Claims—Home Instead

The following is undisputed: (1) Home Instead billed Mr. Goldstein $92 for each four-hour home health care visit in 2019; (2) Mr. Goldstein paid the those bills in full and then filed claims for reimbursement with Aetna; and (3) Aetna reimbursed Mr. Goldstein at a rate of 80% of $65, the Recognized Charge, for all of Mr. Goldstein's claims that are properly before the court.[9] Mr. Goldstein argues that, after taking his deductible into account, Aetna should have

---

[8] In making such a determination, "one of several factors" the court considers "is whether the administrator had a conflict of interest." *Duda*, 649 F. App'x at 235 (quoting *Estate of Schwing v. The Lilly Health Plan*, 562 F.3d 522, 525 (3d Cir. 2009)). However, Mr. Goldstein does not raise any potential conflict of interest issue. Thus, it is not necessary for the court to address a conflict of interest in this Report and Recommendation.

[9] Aetna's briefing does not specifically state the dollar amount of the Recognized Charge that it applied to Mr. Goldstein's claims for reimbursement. (D.I. 18) Some of Aetna's appeal decision letters lack clarity in the same way. (*See, e.g.*, D.I. 16 at 457) For example, in upholding one of its decisions, Aetna stated that the amount Mr. Goldstein had claimed for reimbursement was "over the recognized charge for this service" without specifying a dollar amount of the applicable Recognized Charge. (*See id.*) Adding further confusion, in other decision letters, after noting that Mr. Goldstein had argued that the "allowed amount" for home health care services should have been "$23.00 per hour," Aetna instructed Mr. Goldstein that the "allowable amount" for home health care services is "$65 per hour with the coinsurance being applied to the claim." (*Id.* at 311–12, 429–30, 439–440) Mr. Goldstein points out that Aetna's rationale does not make sense. (D.I. 7 at 6) In isolation, Aetna's conclusion does not make sense because a $65 per hour allowable amount would appear to provide Mr. Goldstein with a greater reimbursement than the $23 per hour amount that he had argued should have applied under the terms of the Plan. However, viewing Aetna's decision letter in the context of the entire administrative record, particularly considering the various explanation of benefits letters that Aetna sent Mr. Goldstein, it is clear that Aetna was using $65 per four-hour visit, not $65 per

paid 80% of $92, the "actual rates" that Home Instead charged him in 2019. (D.I. 7 at 5–8) According to Mr. Goldstein's argument, of the $92 that he was charged per four-hour visit, Aetna should have paid $73.60, and he should have paid $18.40. (*Id.* at 4)

Mr. Goldstein's argument calls for the court to "substitute its own judgment for that of the defendants in determining eligibility for plan benefits," which the court cannot do. *Becknell v. Severance Pay Plan of Johnson & Johnson & U.S. Affiliated Cos.*, 644 F. App'x 205, 210 (3d Cir. 2016) (quoting *Doroshow v. Hartford Life & Accident Ins. Co.*, 574 F.3d 230, 233–34 (3d Cir. 2009)). The court cannot "set aside" Aetna's interpretation of the Plan's language so long as its interpretation is "reasonably consistent with the [P]lan's text." *Bergamatto v. Bd. of Trustees of the NYSA- ILA Pension Fund*, 933 F.3d 257, 264 (3d Cir. 2019) (quoting *Dowling v. Pension Plan for Salaried Emps. of Union Pac. Corp. & Affiliates*, 871 F.3d 239, 245 (3d Cir. 2017) (internal quotation marks and alterations omitted). The controlling terms of the Plan do not require Aetna to reimburse Mr. Goldstein for 80% of the actual rates that he was charged for home health care services by Home Instead. As of January 1, 2019, the Plan covers "80% (of the **recognized charge**) per visit" for home health care services. (D.I. 19 at 96, 115) (emphasis in original) Recognized Charge is defined in the Plan as "[a]n amount determined by Aetna, or its third-party vendors, based on data resources selected by Aetna, reflecting typical competitive charges and/or payments for a service, adjusted for the geographic area in which the service was provided." (*Id.* at 76–77, 115–17) Accordingly, the terms of the Plan require Aetna to reimburse

---

hour, in setting the Recognized Charge and allowable amount applicable to the claims for which Mr. Goldstein has exhausted his administrative appeals with Aetna. (*Cf.* D.I. 16 at 311–312, 350, 429–30, 439–440, 497–98) Viewing the record as a whole, the court assumes the amount of the Recognized Charge Aetna contends is applicable to the disputed claims pending before the court is $65 per four-hour visit. *See Mitchell*, 113 F.3d at 440 (noting that the court must consider the administrative "record as a whole").

Mr. Goldstein for 80% of the Recognized Charge, $65, not 80% of the actual rate, $92, that he was charged by Home Instead. (*See id.*) Mr. Goldstein has not articulated any basis for which the court could conclude that Aetna's interpretation of Recognized Charge as defined in the Plan is unreasonable. The court finds that Aetna's decision to reimburse Mr. Goldstein at a rate of 80% of $65 per four-hour visit by Home Instead in 2019 is supported by a reasonable basis and is reasonably consistent with the terms of the Plan, particularly the Plan's definition of Recognized Charge. (D.I. 19 at 96, 115)

Mr. Goldstein also argues that he "was never informed" or "issued a copy" of the changes to the Plan that took effect on January 1, 2019. (D.I. 7 at 5; D.I. 19 at 115–17) Mr. Goldstein notes that, before 2019, Aetna was paying $73.60 per four-hour visit for his reimbursement claims. (D.I. 7 at 4–5) However, "[e]mployers or other plan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans." *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78 (1995). ERISA plans must contain a "procedure for amending [the] plan" and "[a procedure] for identifying the persons who have authority to amend the plan." *Id.* (quoting ERISA, § 402(b)(3); 29 U.S.C. § 1102(b)(3)). The Plan contains such procedures. (D.I. 19 at 64, 82–83) In addition, members of the Plan could request copies of the Plan and related documents from Sanofi, the Plan Administrator, at any time. (D.I. 19 at 3, 64, 82–83) Mr. Goldstein fails to show that Defendants violated ERISA's notice and disclosure requirements. *See* 29 U.S.C. § 1024(b); *Hozier v. Midwest Fasteners, Inc.*, 908 F.2d 1155, 1169–70 (3d Cir. 1997) (affirming district court's grant of summary judgment in favor of the defendants because violations of ERISA's reporting and disclosure requirements do not entitle a plaintiff to payment of benefits); *see also Roarty v. Tyco Int'l Ltd. Grp. Bus. Travel*

*Acc. Ins. Plan*, 2012 WL 4472227, at *2 (D. Del. Sept. 26, 2012), *aff'd*, 546 F. App'x 85 (3d Cir. 2013).

Therefore, the court recommends denying Mr. Goldstein's motion for summary judgment and entering judgment in Defendants' favor.

### B. Mr. Goldstein's 2020 Claims—Home Instead and Senior Helpers

As a preliminary matter, the parties dispute whether Senior Helpers is licensed such that its services are covered under the terms of the Plan. (D.I. 7 at 5–6; D.I. 18 at 11–12; D.I. 21 at 2–3)  Aetna argues that it properly denied Mr. Goldstein's claims for reimbursement of his costs related to services provided to him and his wife by Senior Helpers in 2020 because, although Senior Helpers is licensed to provide custodial care, it is not a "home health care agency," and custodial care is not covered by the Plan.[10] (D.I. 18 at 11–12)  However, the court does not need to address the parties' dispute regarding whether Senior Helpers is properly licensed or whether custodial care is covered by the terms of the Plan because the disputes that Mr. Goldstein raises about services for which he paid and received in 2020 are not properly before the court.[11] (D.I. 7 at 8–9)

---

[10] Unlike home health care, custodial care is not covered by the Plan. (D.I. 19 at 13, 32)  The Plan defines "custodial care" as "[s]ervices and supplies mainly intended to help meet your activities of daily living or other personal needs." (*Id.* at 70)  The Plan notes that "[c]are may be custodial care even if it prescribed by a physician or given by trained medical personnel." (*Id.*) (emphasis removed)  By contrast, home health care includes, among other things, "skilled nursing services, home health aide services or medical social services." (*Id.* at 19)  The Plan explicitly states that "Home health care services do not include **custodial care**." (*Id.* at 20) (emphasis in original)

[11] In an attachment to their answering brief, Defendants request that the court take judicial notice of the "Delaware State license to provide Personal Assistance Services issued to Senior Helpers," which is included within the body of their answering brief and is labeled "Exhibit 2." (*See* D.I. 18-2 at 1; D.I. 18, Ex. 2)  However, the court declines to take judicial notice of the license because Mr. Goldstein's alleged 2020 disputed claims in general and any claims related to Senior Helpers are not ripe for judicial review, due to his failure to exhaust his administrative remedies.

The complaint does not mention disputes regarding reimbursement for Mr. Goldstein's costs for services provided by Home Instead, Senior Helpers, or any other provider in 2020, nor could it because the complaint was filed on November 25, 2019. (D.I. 1)  Construing all allegations in the complaint in Mr. Goldstein's favor, no cause of action is alleged related to insufficient reimbursement for health care service costs beyond 2019.  *See Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 499 n.1 (3d Cir. 1997) ("Although a complaint's allegations are to be construed favorably to the pleader, we will not read causes of action into a complaint when they are not present.") (internal citations omitted).  Aetna admits that Mr. Goldstein has filed a first level appeal related to a claim for reimbursement of the cost of Senior Helper's services that were provided in 2020.  (D.I. 18 at 10–11, 11 n.2)  However, Aetna notes that Mr. Goldstein did not file the requisite second level appeal to exhaust his administrative remedies for his claim.[12]  (D.I. 18 at 10–11, 11 n.2)  Regardless, nothing in the record before the court reflects that Mr. Goldstein exhausted the administrative appeal process for his 2020 claims related to Senior Helpers or Home Instead.  (D.I. 16; D.I. 19)  Therefore, the court recommends finding that any 2020 disputes raised by Mr. Goldstein are not yet ripe for judicial review.  *See Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 571 U.S. 99, 111 (2013) ("Upon exhaustion of the internal review

---

[12] Aetna informed the court that it would supplement the administrative record accordingly. (D.I. 18 at 10–11 n.2)  However, to date, no additional filings have been made to supplement the administrative record before the court with respect to any disputed 2020 claims.  Regardless, the court cannot consider evidence that was not before Aetna when it denied Mr. Goldstein's appeals.  *See Johnson v. UMWA Health & Ret. Funds*, 125 F. App'x 400, 405 (3d Cir. 2005) ("This Court has made clear that the record for arbitrary and capricious review of ERISA benefits denial is the record made before the plan administrator which cannot be supplemented during litigation.").  The "[o]ne exception to this bar against supplemental evidence is 'evidence of potential biases and conflicts of interest that is not found in the administrator's record.'" *Addington*, 2020 WL 7774952, at *2 n. 20 (3d Cir. Dec. 30, 2020) (quoting *Howley v. Mellon Fin. Corp.*, 625 F.3d 788, 793 (3d Cir. 2010)).  However, Mr. Goldstein does not identify any "potential biases or conflicts of interest" at issue in this case.  *See id.*  Nor is any such conflict apparent in the administrative record before the court.  (D.I. 16; D.I. 19)

process, the participant is entitled to proceed immediately to judicial review, the second tier of ERISA's remedial scheme.").

## V. CONCLUSION

For the foregoing reasons, I recommend that the court deny Mr. Goldstein's motion for summary judgment (D.I. 7) and enter judgment in Defendants' favor.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The objections and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878–79 (3d Cir. 1987).

The parties are directed to the court's Standing Order In Pro Se Matters For Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: March 24, 2021

Sherry R. Fallon
United States Magistrate Judge